Smith, J.
The plaintiff in error claims that the court of common pleas erred in overruling a demurrer filed by him to the petition of the plaintiff below, and in sustaining a demurrer of plaintiff below, to an answer filed by the defendant below, and in rendering a judgment against him on the pleadings, such as was entered.
The original action was one of mandamus, brought against Mr. Hagerty, as the auditor of this county, by the state of Ohio, on relation of the Gas Company. The petition was filed June 6, 1896, and the material allegations, so far as it is necessary to state them, are, in substance, these:
It avers that it is a corporation, and that for many years before the filing of the petition, and at that time, it has had moneys and credits which it has listed, as required by law, for taxation, together with all such real estate as has been, and is necessary to the daily operations of the company,and that defendant is the company, and plaintiff, the auditor of this county. That,-as required by law,it listed and returned, for taxation,on June 9,1891,such real estate at the same valuation as has been returned by the company for the four years preceding 1891, but which values were far in excess of the true and proper values as finally fixed and reported to said auditor, late in the year 1891, by the Board of Review and the County Board of Equalization, sitting as the decennial city and county boards of equalization, respectively. That
*97 the valuation placed on-said real estate for taxation by the relator in its said return, was as follows:
In Cincinnati, ' $1,034,504.00
In Avondale, 31,110.00
In Carthage, ' 43,460.00
Total, $1,109,074.00
And the valuation placed thereon by such boards, was as follows:
In Cincinnati, $758,610.00
In Avondale, 5,640.00
In Carthage, 27,800.00 792,050.00
$317,024.00
It is further averred, that the Gas Company caused a state, ment in writing to be prepared, setting out those facts, and making it appear that it had valued its real estate (in Cincinnati,) at $1,034,500.00, and that the said boards had, that year, fixed the aggregate at $758,610.00, making an erroneous charge on the company’s duplicate of $275,890.00, and wherein it was made to appear and claimed that the company had paid in taxes upon the amount so erroneously charged, $7,835.27. That this statement and claim was presented to said auditor, February, 1893, and he was requested to call the attention of the county commissioners thereto, at any regulator special session thereof. That the said auditor, not disputing but admitting their correctness, refused and still refuses to do so, or otherwise correct the errors upon the duplicate.
The petition further averred, that said relator company returned for taxation,in 1892, real estate erroneously valued by it at $809,970.00, but which the Board of Review returned to the county auditor at a valuation of $756,710.00, making thereby, an improper and erroneous charge on the duplicate of that year, $53,260.00,' on which the company erroneously over-paid in taxes, $1,459.32.
*98 That for the year 1893, the company returned real estate for taxation, erroneously valued by it in its return at $758,260.00, whereas the true and proper value thereof, as fixed by the Board of Supervisors, (the successor of the Board of Review), and reported to the county auditor, was only $757,210.00, making thereby an erroneous charge on the duplicate of $1,050.00,on which the company erroneously paid taxes in the sum of $28.60
And in the same manner there is an allegation of an overcharge and payment of taxes for 1894, of $15.29.
And that in 1895, the relator returned real estate valued at $877,720.00, which by'the Board of Supervisors was valued at $810,090.00, and returned to the auditor, thereby reducing it to the sum of $66,830.00,on which the company 'erroneously paid the one-half of the taxes due thereon, December 20, 1895, the sum of $940.29, and now, (at the filing of the petition,) stands charged erroneously with the other half, due June 20, 1896, viz, $940.29, and said duplicate is now in the hands of the treasurer of the county, for collection.
That in March, 1896, it caused to be prepared a statement in writing, setting forth those facts in detail for the years 1892, 1893, 1894 and 1895, and presented it to the county auditor, and requested' him to call the attention of the county commissioners, at any regular or special session, to such improper and erroneous charges for 1892, 1893, 1894 and 1895, and further requested said auditor to grant and issue a refunder oh the treasurer in favor of the relator, certifying that it was entitled to have refunded and paid back the sum of $940.29, so erroneously paid in December, 1895, and to issue his remitter to said treasurer in favor of relators, certifying to said treasurer that said sum of $940,29, which then stood charged on the duplicate against relator,June 20, 1896, be remitted; yet the auditor, not disputing any of said facts, but admitting them to be *99 correct, and notwithstanding the auditor had thus discovered and had made manifest to him,the said improper and errom eous charges upon the said duplicates, refused and still refuses to call the attention of the county commissioners to the erroneous charges and errors apparent upon said duplicates for the years 1892, 1893, 1894, and has refused and still refuses to grant and issue the refunder and remitter in favor of said relator, for the sums set out for 1895,or otherwise to correct said errors upon the duplicate.
And being without other remedy as is averred, it prays that a writ issue to defendant, commanding and directing him to call the attention of the commissioners to such erroneous and improper charges upon the duplicate for the years 1891, 1892, 1893 and 1894, and that he be directed to issue and grant the refunder and remitter for the sums set out for 1895, and for other relief.
In the petition there is no direct averment that the taxes claimed to be erroneous for 1891, have been paid, but this is probably an over-sight.
On the 6th of Julv, 1896, a general demurrer was filed to this petition, which was overruled by the court, September 8, and exceptions taken. On the same day, without giving the defendant leave to answer, a decree as prayed for wafi entered; that is, that the defendant be required to call the attention of the commissioners to the improper and erroneous payment and collection of the taxes thereon, and that he issue and grant to the relator, the refunder and remitter for the tax of 1895.
On September 17, an answer was filed, and on September 22, a general demurrer to this answer was filed.
The answer admits that the defendant is the auditor, and the relator a corporation under the laws of Ohio, for many years, and that the relator company, on June 9, 1891, returned the real estate for taxation at the valuation as claimed by the petition, and that the allegations as to its *100 returns thereof, for taxation for the years 1892, 1893, 1894 and 1895, were as set out in the petition. That said returns were regularly made and sworn to, and placed on the duplicate of each respective year, and taxes thereon voluntarily paid by said company. He further admits that the values, as fixed and determined by the Board of Review, as county and city board of equalization, and reported by it to the county auditor,are correctly stated in the petition. He then denies that he refused to correct the duplicate for the years aforesaid, on the application of the relator, and avers that the said property of the relator, was placed upon the duplicate as returned by the company, in accordance with law. And it denies all the other averments of the petition not specifically admitted.
The demurrer to this answer was sustained,and defendant excepted. And thereupon defendant, not desiring to answer further,the court found on the pleadings that the relator was entitled to the relief sought, and that there had been an erroneous and improper charge and collection of taxes from the relator,on the duplicates for the years 1891,1892, 1893, 1894 and 1895', and the defendant was ordered to draw his warrant on the county treasurer,, in favor of the relator, for the full amouht of said taxes so erroneously charged and collected.
The questions which have been presented, or which arise on this record, are these: 1st. Whether mandamus will lie in a case of this kind, and this was presented by the demurrer to the petition. 2nd, Whether the fact, that the relator company made this return of. its real estate for taxation affixing a valuation thereto, and that it afterwards voluntarily paid the tax levied on the amount so returned, is a J bar to this action,and this is raised by the demurrer to the answer of the auditor. And 3rd. If the action is maintainable, whether, on the allegations pf the pleadings, under the law as it stands, the relator was entitled to the relief sought; or to that actually granted by the court.
*101 It is conceded that sec. 1038, Revised Statutes, is that upon which the relief sought is based. It gives to the audit- or of the county, the right,and imposes upon himfthe duty, from time to time, to correct all errors which he discovers in the tax list and duplicate, either in the name of the person charged with taxes or assessments, the description of lands or other property, or when property exempt from taxation has been charged with tax, or in the amount of such tax or assessments. * * * And when the auditor , is satisfied, after having delivered the duplicate to the county treasurer for collection, that any tax or assessment thereon, or any part thereof, has been erroneously charged, he may give the person charged therewith, a certificate to that effect, to be presented to said treasurer, who shall deduct the amount from said levy or assessment. And if, at any time, the audit- or discovers that any erroneous taxes or assessments have been charged and collected, he shall call the attention of the county commissioners thereto,and if the commissioners find such to be the case, they shall order the auditor to draw his warrant on the county treasurer,for the full amount of such taxes and assessments so erroneously charged and collected. By a subsequent provision in the same section, this refunder is limited to those payments made within the five years immediately prior to the discovery by the auditor.
The question then, under this section, is this: Whether mandamus will lie against the auditor to compel him to issue, a certificate, to be presented to the treasurer of the county, stating that the amount of $940.29,was erroneously charged against the relator on the duplicate of 1895, payable June 20, 1896. It is entirely clear, we think, that under this section, this was the ,only certificate or warrant the auditor was authorized to issue as to any of those taxes of the relator, claimed to have been erroneously charged, except under the express direction of the county commissioners, acting under the provisions of this section. • If the duty of the auditor as *102 to this, is judicial in its nature, or involving discretion on his part,it would seem that on general principles of the law, as well as on the express provisions of sec. 6742,Rev. Stat., the writ requiring him to do this special act ought not to issue. And there is some reason to think, in this case, that the duty so imposed upon him is not merely ministerial, for it is only when the auditor is satisfied, that the tax or some part thereof,charged upon the duplicate for the current year is erroneously charged, that be can, under the statute, issue a remitter, and his answer, that he was not satisfied of this, might be a good answer to the writ. But, however this may be, we do not think it necessary to express an opinion upon it, for the reason that at this time, the tax collectible June 20, 1896, which was unpaid when the petition in this case was filed,has since been paid, and the amount so paid, therefore,stands on the same footing that the other sums paid do; and the same steps must be taken as to that, as in case of the other payments
_ Another reason is suggested why this action in mandamus will not lie; and that is, that it is claimed that the relator had a plain and adequate remedy in the ordinary course of the law, and, if so, this is a defense. (Sec. 6744, Rev. Stat.) Sec. 5842, Rev. Stat., gives a person the right to enjoin the illegal collection of taxes, and to recover taxés illegally collected by action in the courts. But, under this section, an action to recover taxes erroneously collected, could only be maintained when brought within one year after such collection,and thereby the relator might have availed itself of the provisions of this statute, but it did not do so, and it is now too late to do it. And the question then is, can it now resort to a proceeding in mandamus, and thereby, in effect, extend the statute of limitations to five years?
We incline to the opinion, that the proceeding in mandamus,to require the auditor,on discovering that taxes have been erroneously collected within five years, to call the at *103 tention of the county commissioners thereto, will lie in this case. So far as we can see, the provisions of what is now sec. 1038, with reference to giving the county commissioners the right to order the refunder of taxes erroneously collected within the preceding five years, first appeared in Ohio Laws, vol. 70, page 11, passed January 16, 1873. At that time substantially, the provisions of what is now sec. 5848, were in force under the law of May 1, 1856, (S. & C.,1151,) which also required that actions to collect taxes erroneously collected, should be brought within one year after their payment. The law,then,of January 16, 1873, seems to give a new right to persons who have erroneously paid taxes, viz, to have the judgment of the county commissioners, as to whether on principles of equity and justice, taxes erroneously collected within five years before that time, should be refunded. And if a duty i§ imposed upon the auditor on discovering such erroneous collection, to call the attention of the commissioners to it, this is a ministerial act, which he may be required to do by proceedings in mandamus. We think,then,the court did not err in overruling the demurrer to the petition.
Was the demurrer to the answer of the defendant properly sustained ? This raises the question whether the fact that the relator voluntarily paid the taxes erroneously charged against it, would bar it of its right in this mandamus proceeding, to have the matter brought to the attention of the commissioners, If this action were one to recover the taxes so erroneously collected, it is probable, under the decisions of our courts, that the defense would be a good one. See 48 Ohio St.,210. But for the reasons before stated, we .think that this averment would not be a defense to this kind of action. And we suppose that the commissioners might order a refunder when the case was brought to their consideration, though the payment had been voluntary. That is a matter to be settled by the board of commissioners. There was no *104 averment in the answer of the auditor, that he had not discovered the fact that those taxes had been erroneously collected. He only alleges the voluntary payment of the taxes,- and denies that he refused to call the attention of the commissioners to the matter when requested. The demurrer to this answer was properly sustained by the court.
But we think the judgment of the court on the petition went far beyond the claim made by it, and far beyond the power of the court. All that should have been "done, was to require the auditor to call the attention of the county commissioners to the matter, so that they, might consider it, and the order of the court actually made, requiring the auditor to draw his warrant on the county treasurer,in favor of the relator for the full amount of the taxes erroneously collected, as found by the court, for the years 1891, 1892, 1893, 1894 and 1895, as set out in detail in the plaintiff’s petition, was clearly erroneous,
As before stated, the auditor can only do so when ordered to do it by the commissioners. The judgment will, therefore, be reversed, and the case be remanded to the court of common pleas for further proceedings.